In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1579

KORANSKY, BOUWER & PORACKY, P.C.,

*Plaintiff-Appellant,*

*v.*

THE BAR PLAN MUTUAL INSURANCE CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 10 CV 535—**William C. Lee**, *Judge.*

ARGUED JANUARY 17, 2013—DECIDED APRIL 2, 2013

Before MANION and TINDER, *Circuit Judges*, and LEE, *District Judge.*[*]

MANION, *Circuit Judge.* The law firm of Koransky, Bouwer & Poracky, P.C. represented a potential buyer

---

[*] Honorable John Z. Lee, of the Northern District of Illinois, sitting by designation.

in the purchase of a Rite Aid drugstore located in Lima, Ohio. Buyer and Seller executed the sales contract separately. Koransky & Bouwer misfiled the contract executed by Buyer, however, and Seller subsequently attempted to rescind the contract—which it characterized as an offer—because it had not timely received a copy of the contract executed by Buyer. When Seller's efforts to avoid the purported contract ultimately proved successful, Buyer sent a "formal notice of claim" to Koransky & Bouwer. The law firm, in turn, sought coverage from its professional liability insurer, but that insurer concluded that Koransky & Bouwer was not entitled to coverage because it failed to properly notify the insurer of the mistake that ultimately led to the malpractice claim. Koransky & Bouwer filed suit in federal court for a declaratory judgment that the law firm was entitled to coverage, and both the insurer and the law firm moved for summary judgment. The district court granted the insurer's motion and denied the law firm's motion. Koransky & Bouwer appeals. We affirm.

## I.  Factual Background

Koransky, Bouwer & Poracky, P.C. ("Koransky & Bouwer") is a law firm located in Indiana that represented George Novogroder ("Buyer") when he entered into negotiations to purchase four Rite Aid drugstores in Ohio from Newton Oldacre McDonald, LLC ("Seller"). After the negotiations were completed, Koransky & Bouwer drafted the sales contracts for each of the transactions. The first three sales closed without incident.

This appeal arises from the fourth transaction, which was virtually identical to the first three, and was for a Rite Aid located in the city of Lima in Allen County, Ohio. On January 24, 2007, after the negotiations had ended, Koransky & Bouwer sent Seller's counsel a copy of the sales contract containing the agreed terms. Seller executed the contract and returned it to Koransky & Bouwer on January 31. Buyer executed the contract on February 9. On February 11, counsel for Seller inquired about the status of the contract, and Koransky & Bouwer responded that Buyer had executed it. But Koransky & Bouwer had inadvertently misfiled the executed contract, and consequently failed to deliver it to Seller.

On February 22, Seller's counsel sent a letter to Koransky & Bouwer stating, "Buyer has not accepted and returned the Contract, and effective immediately Seller hereby rescinds Seller's signature to the offer and declares the Contract null and void and of no further effect." The next day, an associate at Koransky & Bouwer sent an email to Seller's counsel stating:

> I looked through all my files. It turns out the originals were placed in the wrong Rite Aid file, attached are scanned copies of the signed documents. This whole situation is my fault and not the fault of my client. I apologize for this situation. I therefore kindly request that the cancellation notice be withdrawn, and upon withdrawal, I will overnight the signed originals.

Counsel for Seller responded via email stating, "Our business team has met and confirmed their decision to

rescind the Seller's offer. We have decided to take a different strategic direction with this property." In response, on March 2, Peter Koransky sent a letter to Seller's counsel stating that Buyer "is desirous of pursuing all applicable remedies both in law and in equity to enforce the terms of the Contract . . . ." Koransky went on to say that, while Buyer wished to avoid "protracted litigation," if no agreement could be reached, then "we would have no alternative but to file appropriate litigation at this time including a lis pendens notice."

The sales contract provided that any litigation arising from the agreement would be in the county where the property was located and would be controlled by the law of the state in which the property was located. Thus, under the terms of the contract, venue was in Allen County, Ohio, and Ohio law would apply to any litigation arising out of the contract. Buyer hired an attorney in Ohio who notified Buyer and Koransky & Bouwer that, in his opinion, the sales contract was binding because Ohio law does not require that a contract be delivered in order to be valid.[1]

---

[1] The district court and The Bar Plan Mutual Insurance Co. both reference a specified date by which the executed contract was supposed to be delivered to Seller. The sales contract does not specify a date by which it had to be delivered, however, and we can find no evidence in the record that Buyer and Seller had otherwise stipulated to such a date. Although such an agreed delivery date would be significant inasmuch as Buyer and Seller were free to

(continued...)

However, on March 14, Seller commenced an action in Alabama state court seeking a declaration that no contract had been formed. Buyer hired an Alabama firm, which employed an attorney who had previously served as the Chief Justice of the Supreme Court of Alabama. That law firm filed a motion to dismiss the Alabama action contending that the Alabama court could not exercise jurisdiction over the case or apply Alabama law. Buyer also initiated an action in Ohio state court on March 30, which was later removed to federal court, seeking to enforce the contract.

Meanwhile, Koransky & Bouwer was in the process of renewing its professional liability insurance with The Bar Plan Mutual Insurance Co. Koransky & Bouwer's 2006-07 policy was in effect in February and March 2007. It contained a discovery clause (reproduced in Appendix A attached to this opinion) which required Koransky & Bouwer to notify The Bar Plan within the policy period in which the law firm first becomes aware of any act or omission which "may give rise to a Claim."

Because Koransky & Bouwer's 2006-07 policy was expiring on April 15, 2007, the law firm submitted a

---

[1]  (...continued)
contract around Ohio's rule that a contract need not be delivered to be effective, *see Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.*, 662 N.E.2d 837, 842-44 (Ohio Ct. App. 1995), we do not rely upon this fact in resolving this appeal.

renewal application on March 10. In completing that application, Koransky & Bouwer responded in the negative to the question: "Does the firm or any attorney or employee in the firm have knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us?" In executing the application, Koransky & Bouwer agreed that all representations were true and that no information had been omitted. Further, the law firm agreed to notify the Bar Plan of any material changes "between the date of the application and the effective date of the Policy." The application warned Koransky & Bouwer to report all known circumstances, acts, or omissions, which could result in a malpractice claim against the firm, within the time frame specified in the 2006-07 policy. Below this language (reproduced in Appendix B attached to this opinion) the renewal application was signed by Koransky.

Based on the renewal application, The Bar Plan issued Koransky & Bouwer a policy effective from April 15, 2007, through April 15, 2008. That policy (reproduced in pertinent part in Appendix C attached to this opinion) required Koransky & Bouwer to notify The Bar Plan during the policy period if, at some point during that policy period, the law firm "first becomes aware of a specific incident, act or omission while acting in a professional capacity providing Legal Services, which may give rise to a Claim . . . ." Further, in the Professional Liability and Claims-Made and Reported Clause, the policy limited coverage for acts or omissions predating the policy period to situations where

Koransky & Bouwer "had no basis to believe that [it] had committed such an act or omission." And, under III. Exclusions L, the policy expressly precluded coverage for unreported actions or omissions predating the policy period where, "before the Policy effective date," the law firm "knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim."

On June 12, 2007, after Koransky & Bouwer's 2007-08 policy was issued, the Alabama state court held a hearing on Buyer's motion to dismiss, and then concluded that it had jurisdiction to decide the case.[2] Thereafter, the Ohio district court stayed Buyer's action because the Alabama action had been filed first. *See Novogroder v. NOM Lima Shawnee, LLC*, No. 3:07 CV 1284,

---

[2] It is unclear when the Alabama trial court first decided that it would exercise jurisdiction. Koransky & Bouwer's brief states that the Alabama court held a hearing on Buyer's motion to dismiss on June 12. But the Alabama court's October 15 order, which disposed of the issues raised at the June 12 hearing, states that, prior to the June 12 hearing, the Alabama court had ruled that it had jurisdiction on at least two different occasions. *See Newton Oldacre McDonald, LLC v. Novogroder*, No. CV-07-72-R (Cir. Ct. Ala. Oct. 15, 2007). And Seller's appellate brief to the Supreme Court of Alabama (which admittedly is not part of the record) states that the Alabama trial court first entertained arguments regarding the motion to dismiss at a hearing on April 16. *See* Brief of the Appellees, *Novogroder v. Newton Oldacre McDonald, LLC*, 54 So. 3d 965 (2009), 2008 WL 6507582, at *2.

2010 WL 4628583, at *1 (N.D. Ohio Nov. 8, 2010). The Alabama court eventually held that no contract had been formed because the executed contract was never delivered to Seller. *Newton Oldacre McDonald, LLC v. Novogroder*, No. CV-07-72-R (Cir. Ct. Ala. Oct. 15, 2007). The Ohio district court then dismissed Buyer's claims. *Novogroder*, 2010 WL 4628583, at *1.

In August 2007, Buyer informed Koransky & Bouwer that he was considering a malpractice claim against the law firm. Koransky & Bouwer immediately called its insurance agent. According to Koransky & Bouwer, the insurance agent advised the law firm that he could do nothing until Buyer made a claim. The insurance agent recommended that Koransky & Bouwer attempt to obtain a claim-letter from Buyer. On August 28, Buyer sent a "formal notice of claim" to Koransky & Bouwer. Koransky & Bouwer forwarded this claim to The Bar Plan, which received it on August 30.

After performing an initial investigation, The Bar Plan concluded that Koransky & Bouwer had learned of the facts underlying the claim in February 2007. Therefore, The Bar Plan concluded that Koransky & Bouwer should have made a report prior to the April 15 expiration date of the 2006-07 policy. But because the law firm did not make an initial report until August 2007, The Bar Plan decided that Koransky & Bouwer could not meet the coverage requirements for a claim arising out of an act or omission predating the 2007-08 policy's effective date. The Bar Plan also relied upon the 2007-08 policy's exclusion of "[a] Claim against an Insured

who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim." Thus, The Bar Plan declined to represent Koransky & Bouwer in or indemnify it for Buyer's malpractice claim.

Unsurprisingly, Koransky & Bouwer disagreed with The Bar Plan's determination, and eventually the parties' dispute ended up in federal court. Both parties moved for summary judgment. The district court concluded that coverage for Buyer's malpractice action was precluded by the terms of Koransky & Bouwer's 2007-08 policy because the law firm did not notify The Bar Plan of its failure to deliver the executed contract to Seller in February and of the Alabama and Ohio lawsuits in March—all of which occurred prior to April 15, 2007, when the 2006-07 policy expired and the 2007-08 policy became effective. Thus, the district court granted The Bar Plan's motion for summary judgment while denying Koransky & Bouwer's motion. Koransky & Bouwer appeals.

## II. Discussion

On appeal, Koransky & Bouwer contends that its professional liability insurance policy provided coverage for Buyer's malpractice claim because the law firm did notify The Bar Plan when Buyer actually made a malpractice claim. Alternatively, Koransky & Bouwer argues that it notified The Bar Plan as soon as the law firm had reason to think that its failure to deliver the

executed contract to Seller might result in a claim. Finally, Koransky & Bouwer contends that, even if its notice was untimely under the terms of the policy, The Bar Plan was not prejudiced by the delay. The Bar Plan disputes each of these contentions and argues in its brief that it is entitled to rescission of the 2007-08 policy because Koransky & Bouwer's application for that policy contained a material misrepresentation. Because the district court ruled at the summary judgment stage, our review is *de novo*. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1119-20 (7th Cir. 1998). "Moreover, insofar as interpretations of insurance contracts are questions of law, we likewise review such issues *de novo*." *Id.*

Because the district court sits in Indiana and the parties do not challenge the district court's application of Indiana law, we construe Koransky & Bouwer's policy in accordance with Indiana law. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) ("We do not worry about conflict of laws unless the parties disagree on which state's law applies. Further, when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." (internal quotation marks and citations omitted)). Indiana law provides that insurance policies are to be governed by the general rules applicable to all contracts. *Kimmel v. W. Reserve Life Assurance Co. of Ohio*, 627 F.3d 607, 609 (7th Cir. 2010). Hence, we must enforce the terms of Koransky & Bouwer's policy according to their plain

and ordinary meaning, so long as that meaning is unambiguous. *Id.*

Koransky & Bouwer's policy is a "claims made" policy. "A 'claims made' policy links coverage to the claim and notice rather than the injury." *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 522 (Ind. Ct. App. 2000) (citing *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998)). "Thus, a 'claims made' policy protects the holder only against claims made during the life of the policy." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978)).

In this case, because Koransky & Bouwer reported the claim to The Bar Plan in August 2007, the law firm's 2007-08 policy controls. As with the previous policy, the 2007-08 policy required Koransky & Bouwer to notify The Bar Plan during the policy period if, at some point during that policy period, the law firm "first becomes aware of a specific incident, act or omission while acting in a professional capacity providing Legal Services, which may give rise to a Claim . . . ." This notice requirement "is not simply the part of the insured's duty to cooperate, it defines the limits of the insurer's obligation." *Paint Shuttle*, 733 N.E.2d at 522; *see also Ashby v. Bar Plan Mut. Ins. Co.*, 949 N.E.2d 307, 312 (Ind. 2011). That is, "the notice requirement is 'material, and of the essence of the contract.'" *Paint Shuttle*, 733 N.E.2d at 520 (quoting *London Guarantee & Accident Co. v. Siwy*, 66 N.E. 481, 482 (Ind. Ct. App. 1903)). This means that "[t]he duty to notify an insurance company of potential liability is a condition

precedent to the company's liability to its insured." *Id.*
(citing *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503,
507 (Ind. Ct. App. 1993)). And "[w]hen the facts of the
case are not in dispute, what constitutes proper notice
is a question of law for the court to decide." *Id.*

The Bar Plan argues that Koransky & Bouwer did
not properly notify it of the potential liability because
Koransky & Bouwer did not notify it as soon as the
law firm first had a basis to believe that it had commit-
ted acts or omissions which may give rise to a mal-
practice claim, as required by the policy. Specifically, The
Bar Plan asserts that Koransky & Bouwer first knew
or should have known that it had committed such
acts or omissions in February and March—prior to
April 15, 2007, when the 2006-07 policy expired and
before the 2007-08 policy became effective. If so, then
Koransky & Bouwer's notice was untimely because the
2007-08 did not cover acts or omissions predating the
policy period unless Koransky & Bouwer "had no basis
to believe that [it] had committed such an act or omis-
sion." In fact, the policy expressly precluded coverage
for unreported actions or omissions predating the
policy period where, "before the Policy effective date,"
the law firm "knew, or should reasonably have
known, of any circumstance, act or omission that might
reasonably be expected to be the basis of that Claim."

Koransky & Bouwer initially responds that the 2007-08
policy did not require the law firm to notify The Bar
Plan until the law firm actually receives a malpractice
claim. The policy provisions quoted above demonstrate

that the Koransky & Bouwer's argument is without merit. The discovery clause required Koransky & Bouwer to notify The Bar Plan within the policy period in which the law firm first becomes aware of an act or omission which "*may* give rise to a Claim." (emphasis added). Similarly, the policy expressly precluded coverage for unreported actions or omissions predating the policy period if the law firm knew or reasonably should have known before the policy effective date "of any circumstance, act or omission that *might reasonably be expected to be* the basis of that Claim." (emphasis added). These provisions make clear that the obligation to notify The Bar Plan arose, not when the law firm has received an actual claim, but when it became aware of an "act or omission" which "may give rise to a Claim."

Thus, the proper question is whether in February and March 2007, prior to the 2007-08 policy's effective date, Koransky & Bouwer had knowledge of an act or omission on its part that might reasonably be expected to be the basis of a malpractice claim by Buyer. On February 22, Koransky & Bouwer received a communication from Seller's counsel stating that Seller was "rescinding" its offer because it never received the executed contract. On the following day, an associate at Koransky & Bouwer attempted to salvage the deal by admitting to Seller's counsel that he had mistakenly misfiled the executed contract and failed to deliver it to Seller. The associate apologized and informed Seller's counsel that Buyer, who was without fault, still wished to complete the sale. Seller's counsel responded that the deal was definitely off. In response, on March 2,

Koransky sent a letter to Seller's counsel stating that Buyer intended to enforce the contract and threatening "to file appropriate litigation" if no agreement could be reached.[3] A reasonable attorney in Koransky & Bouwer's position would realize that his client might bring a malpractice claim against him because, as a result of the attorney's mistake, Seller was refusing to complete the negotiated sale.

But we need not rely solely on the February exchange. Three weeks later, Seller filed a declaratory-judgment action in Alabama state court seeking a declaration that no contract existed. Thereupon, Koransky & Bouwer was informed of the filing and knew, beyond doubt, that Seller had no intention of honoring its agreement and that Koransky & Bouwer's failure to deliver the executed contract may result in a claim against it for malpractice.

Koransky & Bouwer responds that it had no reason to think that the deal was truly doomed because it had on good authority—a former Alabama Supreme Court Chief Justice—that the Alabama court would not exercise jurisdiction, and Buyer's Ohio counsel informed Koransky & Bouwer that the contract was enforceable because Ohio law does not require delivery. But whether a court would eventually rule in favor of Koransky & Bouwer's former client is irrelevant. The question is

---

[3] Koransky sent this letter eight days before he submitted the application to renew Koransky & Bouwer's professional liability insurance.

whether Koransky & Bouwer had reason to believe that their acts or omissions *may* result in a claim for malpractice. Because Koransky & Bouwer knew that Seller was refusing to go through with the deal as a result of the law firm's failure to deliver the executed contract, it had such knowledge.

Moreover, we decline Koransky & Bouwer's invitation to hold that the notice requirement was too burdensome because it required the law firm to "report every error, no matter how trivial . . . ." It may well be difficult to determine exactly when an act or omission "might reasonably be expected to be the basis of" a malpractice claim. But this case is not a close one. Buyer believed that the parties had formed a binding agreement. However, as a result of Koransky & Bouwer's failure to deliver the executed contract, Seller refused to complete the deal and active litigation ensued. Once the Alabama case was filed, Koransky & Bouwer knew or should have known that the only thing standing between it and a probable malpractice claim was the question of whether the Alabama state court would exercise jurisdiction. No matter how we construe the record, it is clear that a reasonable attorney would have recognized that his failure to deliver the contract, in light of the communications and legal activity that quickly followed, was an omission that could reasonably be expected to be the basis of a malpractice claim.

Koransky & Bouwer contends that, even if its notice was untimely, The Bar Plan was not prejudiced by the delay. The district court concluded that, under Indiana

law, prejudice is irrelevant to "claims made" professional liability policies. *See Paint Shuttle*, 733 N.E.2d at 523 ("Because we believe that the extension of notice period in a 'claims made' policy would create an unbargained for expansion of coverage, we do not believe that [the insurer] is required to show that it was prejudiced by the untimely delay."). On appeal, Koransky & Bouwer does not explicitly challenge the district court's ruling regarding the controlling legal rule in Indiana. Nor does Koransky & Bouwer cite any authority undermining that ruling or in support of the law firm's limited discussion of prejudice. Therefore, Koransky & Bouwer has likely waived any challenge to the district court's ruling regarding prejudice. *See United States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999) (holding that failure to address or develop a claim in an opening brief constitutes waiver); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) (holding that failure to cite relevant authority constitutes waiver).

Of course, Koransky & Bouwer's assertion that The Bar Plan was not prejudiced is certainly an implicit attack on the district court's conclusion that prejudice is legally irrelevant—albeit, an attack still unsupported by precedent. But even if Koransky & Bouwer has not waived the prejudice issue, we would agree with the district court that *Paint Shuttle* renders the law firm's argument irrelevant. *See* 733 N.E.2d at 523.

Although the analysis above disposes of Koransky & Bouwer's appeal, we briefly discuss one final matter raised by The Bar Plan. Specifically, The Bar Plan argues

in its brief that it is entitled to rescission of the 2007-08 policy because Koransky & Bouwer's application for that policy contained a material misrepresentation—namely, that the law firm responded in the negative to the question: "Does the firm or any attorney or employee in the firm have knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us?" But the district court did not grant The Bar Plan's rescission request, and at oral argument we asked counsel for The Bar Plan whether his client was still seeking rescission.[4] Counsel responded, "No, I think you can go with exclusion, but you could also go with rescission." He also observed that he did not think that we needed to address the issue of rescission in order to get the result that The Bar Plan seeks, and stated that he was comfortable with affirmation rather than an expansion of the district court's judgment to include rescission. Accordingly, because we are affirming, there is no need to address the merits of The Bar Plan's rescission argument. *See McDonough v. Royal Caribbean Cruises, Ltd.*, 66 F.3d 150, 151 (7th Cir. 1995) ("[I]f the district court's reasoning is sound and has sufficient evidentiary support, the appellate court need not consider issues on which the district court's holding did not rest.").

---

[4]  The 2007-08 policy expired on April 15, 2008.

### III. Conclusion

Koransky & Bouwer's knowledge of the email exchange with Seller's counsel on February 22-23 and of the Alabama declaratory-judgment action filed on March 14 constituted knowledge of "any circumstance, act or omission that might reasonably be expected to be the basis of" a malpractice claim by Buyer. Therefore, the district court's opinion and order granting The Bar Plan's motion for summary judgment and denying Koransky & Bouwer's motion for summary judgment is AFFIRMED.

**APPENDIX A**

(Excerpts from Koransky & Bouwer's 2006-07 professional liability insurance policy):

**II.  COVERAGE**

* * *

**C.  DISCOVERY CLAUSE:**

If during the Policy Period, or any Extension Period elected hereunder, an Insured first becomes aware of a specific incident, act or omission while acting in a professional capacity providing Legal Services, which may give rise to a Claim for which coverage is provided under this Policy, and during the Policy Period or any Extension Period Coverage the Insured gives written notice to the company of:

1. The specific incident, act or omission;

2. The injury or damage which has resulted or may result from such incident, act or omission; and

3. The circumstance(s) by which the Insured first became aware of such incident, act or omission;

then any Claim that may subsequently be made against the Insured arising out of such incident, act or omission shall be deemed for the purposes of this insurance to have been made during the Policy Period or any Extension Period elected hereunder. The Insured shall cooperate fully with the Company as provided in Section VII. CLAIMS, Paragraphs A. and B., and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this Policy.

**APPENDIX B**

(Excerpts from Koransky & Bouwer's renewal application for the 2007-08 professional liability insurance policy):

**NOTICE TO APPLICANT—PLEASE READ CAREFULLY:**

REPRESENTATION: Applicant represents that the statements and information contained herein are true and that Applicant has not suppressed, omitted or misstated any facts. Applicant has made inquiry with each lawyer in the firm regarding the accuracy of the answers on this application. Applicant agrees that this application shall be the basis of the Policy of insurance issued by the Company and incorporated therein. Applicant agrees to notify the Company of any material change(s) in the statements in the application forms between the date of the application and the effective date of the Policy of insurance. Applicant understands that any change(s) may result in an adjustment of the terms and conditions of the Policy of insurance and/or premium charges.

Applicant understands that the Policy applied for provides coverage on a "claims made and reported" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD and that coverage ceases with the termination of the Policy unless Applicant exercises the options available in the Policy for Extended Reporting Coverage.

**IMPORTANT REMINDER**

**TO AVOID LOSS OF COVERAGE IT IS IMPERATIVE THAT ALL KNOWN CIRCUMSTANCES, ACT [sic] OR OMISSIONS WHICH COULD RESULT IN A PROFES-SIONAL LIABILITY CLAIM AGAINST YOU, YOUR FIRM OR A PREDECESSOR IN BUSINESS BE RE-PORTED TO YOUR PRESENT INSURER WITHIN THE TIME PERIOD SPECIFIED IN YOUR PRESENT POLICY. PLEASE CONTACT THE BAR PLAN MUTUAL INSUR-ANCE COMPANY IF YOU DESIRE ASSISTANCE.**

**APPENDIX C**

(Excerpts from Koransky & Bouwer's 2007-08 professional liability insurance policy):

**IMPORTANT NOTICES**

**This is a Claims-Made and Reported Policy. Only those Claims first made against an Insured and reported to the Company during the Policy Period are covered, subject to the terms and conditions of this Policy.**

**If a Claim is made against an Insured during the Policy Period as a result of an act or omission prior to the Policy Period, Coverage is subject to the Insured having no basis to believe that such Insured had committed such an act or omission prior to the Policy Period and subject to the other terms and conditions of this Policy.**

\* \* \*

**I. DEFINITIONS** Whenever used in this Policy:

\* \* \*

**D. "CLAIM"** means: Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured.

* * *

**M. "POLICY PERIOD"** means: The one-year period from the effective date of this Policy to the expiration date as set forth in the Declarations or its earlier cancellation or termination date.

* * *

## II. COVERAGE

### A. PROFESSIONAL LIABILITY AND CLAIMS-MADE AND REPORTED CLAUSE:

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENSION PERIOD COVERAGE AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED CLAIM REPORTING PERIOD, OR ANY APPLICABLE EXTENSION PERIOD COVERAGE by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services.

**PROVIDED ALWAYS THAT** such act or omission happens:

1. During the Policy Period: or

2. Prior to the Policy Period, provided that prior to the effective date of this Policy:

  a. Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and

  b. Such Insured had no basis to believe that such Insured had committed such an act or omission.

* * *

### III.  EXCLUSIONS

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT OF:**

* * *

L. A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim.

* * *

### VII.  CLAIMS

### A.  NOTICE OF A CLAIM:

As a condition precedent to the coverage provided by this Policy and subject to the provisions of Section II. COVERAGE, Paragraph D. of this Policy, an Insured

shall, within twenty (20) days of the date of any Claim is first made against that Insured, give written notice of that Claim to the Company.

* * *

## VIII.  OTHER CONDITIONS

## A.  APPLICATION

By acceptance of this Policy, all Insureds agree that the representations made in the Declaration Letter and Application (including all supplements) attached hereto and hereby made part of this Policy are true and complete to the best of the knowledge of all Insureds. This Policy is issued in reliance upon the truth of such representations and all Insureds warrant that no facts have been suppressed or misstated. This Policy embodies all agreements existing between the Insureds and the Company and any agents of the Company relating to this Policy.[5]

---

[5] The 2007-08 policy also contained a discovery clause identical to the one in the 2006-07 policy.