# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 10, 2015          Decided April 21, 2015

No. 14-7063

CHICAGO INSURANCE COMPANY,
APPELLEE

v.

PAULSON & NACE, PLLC AND BARRY JOHN NACE,
APPELLANTS

GABRIEL ASSAAD AND SARAH GILBERT,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-02068)

*Stephen A. Horvath* argued the cause and filed the briefs for appellants.

*Paulette S. Sarp* argued the cause for appellee Chicago Insurance Company. With her on the brief was *David Hudgins*.

*Carla D. Brown* was on the brief for appellee Sarah Gilbert.

Before: HENDERSON, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: A law firm was engaged to bring a medical malpractice action on behalf of a young woman who had become paralyzed after surgery. Roughly a year and a half after the engagement, the firm filed two complaints in Virginia state court, each of which was dismissed: the first without prejudice for failure to correctly caption a pleading; the second with prejudice for filing outside the statute of limitations. Shortly thereafter, the law firm applied for and obtained a new professional liability insurance policy. A few years later, the aggrieved client sued the law firm for legal malpractice, and the firm in turn sought coverage from its insurer.

The insurance coverage dispute at the heart of this appeal turns on whether, at the time the law firm applied for its new policy, the firm was on notice that it had committed a breach of professional conduct, or otherwise should have foreseen that the dismissals could give rise to a legal malpractice claim. If so, then the insurer was relieved of any obligation to cover the malpractice claim under the policy's "known risk" exclusion.

The District Court found, as a matter of law and without expert testimony, that the law firm was on notice of the potential malpractice claim. The District Court also rejected arguments that the insurer had forfeited or waived its right to deny coverage. We agree with the District Court's resolution of each of these issues, and therefore affirm its decision granting summary judgment in favor of the insurer.

3

**I.**

On July 28, 2004, Sarah Gilbert, a fourteen-year-old girl residing in Virginia, underwent a spinal surgery that left her paralyzed. Five months later, Ms. Gilbert's parents retained the law firm of Paulson & Nace, PLLC, to pursue a claim of medical malpractice on her behalf. J.A. 842. The firm filed a medical malpractice complaint in Virginia on July 24, 2006, four days before the statute of limitations expired on Gilbert's claims. *See* July 24, 2006 Compl., J.A. 98.

The caption on this complaint read: "Richard Gilbert and Rosie Lee Gilbert, Individually and on behalf of their daughter, Sarah Gilbert, a minor." *Id*. Under Virginia Code § 8.01-8 and Virginia case law, however, the caption should have read: "Sarah Gilbert, by her parents and next friends Richard Gilbert and Rosie Lee Gilbert, and Richard Gilbert and Rosie Lee Gilbert, Individually." *See Herndon v. St. Mary's Hosp. Inc.,* 266 Va. 472, 476 (2003). After the medical practice moved to dismiss based on this error, Paulson & Nace filed a properly captioned complaint in a separate civil action. *See* October 25, 2006 Compl., J.A. 104.

The Virginia court dismissed the claims in the first case without prejudice on February 27, 2007, based on the caption error. First Dismissal Order, J.A. 143. During a hearing on June 18, 2007, the same court stated that it would dismiss the second complaint with prejudice on statute of limitations grounds. Transcript of Motions Hearing at 31-32, J.A. 176-77. Paulson & Nace appealed the trial court's decision but was unsuccessful.

On July 18, 2007, while the state court appeal was still pending, the firm's sole member, Barry J. Nace, applied for a new insurance policy with Chicago Insurance Company.

Claims-Made Application, J.A. 200-09. Nace was asked whether there were "any circumstances which may result in a claim being made against [his] firm." *Id*., J.A. 204. Despite the recent dismissal of Gilbert's claims, Nace responded "no." *Id.*

Chicago Insurance subsequently issued Paulson & Nace a "claims-made" liability insurance policy – that is, coverage for all claims made within the policy period, regardless of when the events giving rise to the claim occurred. But the policy also contained a standard known risk exclusion, meaning pre-policy conduct would not be covered if the firm had a reasonable basis "to believe that the [firm] had breached a professional duty" prior to the policy's issuance or to otherwise foresee that pre-policy conduct might result in a claim against the firm. Insurance Policy, J.A. 523, 527-28.[1]

Paulson & Nace eventually informed Chicago Insurance in May 2009 of the Gilbert incident, though it represented that the potential malpractice had occurred in 2008, not 2006. Incident Information Form, J.A. 254. Shortly thereafter, Chicago Insurance provided Paulson & Nace with an attorney, who submitted relevant case files and other materials to Chicago Insurance throughout 2010 and 2011. In November 2011, the insurance company noticed that Paulson & Nace had made the caption error in 2006 – prior to the policy period. On January 13, 2012, Chicago Insurance notified Paulson & Nace that it reserved its rights to deny coverage under the known risk exclusion if a malpractice suit arose. J.A. 847-48.

---

[1] This type of provision is routinely referred to as a "prior knowledge," "known risk," or "known loss" exclusion. *See* 7 Couch on Ins. §§ 102:9, 102:11 (3d ed. 2013).

Ms. Gilbert eventually filed a legal malpractice action against the law firm in March 2012, and she was awarded $1,750,000 by a Virginia court in 2013. Chicago Insurance brought this declaratory judgment action premised on diversity jurisdiction, contending that Paulson & Nace should have known of the potential claim when it applied for the insurance policy and that the known risk exclusion therefore applied. The District Court granted summary judgment in favor of Chicago Insurance. *Chicago Ins. Co. v. Paulson & Nace, PLLC*, 37 F. Supp. 3d 281 (D.D.C. 2014). Paulson & Nace appeals.[2]

## II.

We review *de novo* the District Court's grant of summary judgment. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Summary judgment is appropriate only if the evidence in the record shows that, first, "there is no genuine dispute as to any material fact," and, second, "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In making this determination, we "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and brackets omitted). Choice of law questions are also subject to *de novo* review. *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009).

---

[2] Chicago Insurance brought this action against the following defendants: Paulson & Nace; Barry Nace; one of the firm's associates, Gabriel Assaad; and Sarah Gilbert. Only Paulson & Nace and Barry Nace appeal the District Court's decision. For convenience, the term Paulson & Nace is used to refer collectively to the firm and Barry Nace.

## III.

### A.

The principal question in this case is whether a reasonable attorney in Paulson & Nace's position would have been on notice by July 2007 of a possible breach of professional duty or a potential malpractice claim, such that there was an obligation to disclose the underlying incident to the insurer. *See Ross v. Cont'l Cas. Co.*, 420 B.R. 43, 48 (D.D.C. 2009), *aff'd*, 393 F. App'x 726 (D.C. Cir. 2010) (interpreting known risk clause as "incorporating a subjective look at the insured's actual knowledge and an objective consideration of 'whether a reasonable professional in the insured's position might expect a claim or suit to result'") (quoting *Colliers Lanard & Axilbund v. Lloyds of London,* 458 F.3d 231, 237 (3d Cir. 2006)). This question is appropriate for summary judgment only if a reasonable jury "can draw but one inference and that inference points unerringly to the conclusion that the insured has not acted reasonably under the circumstances." *Starks v. N. E. Ins. Co.*, 408 A.2d 980, 982 (D.C. 1979) (internal quotation marks omitted); *accord Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 991 (D.C. 2001).

We agree with the District Court that no reasonable jury could have found against Chicago Insurance on this question. It is undisputed that Paulson & Nace was aware that the first complaint was improperly captioned, as evidenced by its attempt to correct the error in October 2006 and by the dismissal of the complaint on the basis of the captioning error in February 2007. It also is undisputed that Paulson & Nace knew that its attempt to correct the error had failed at the trial level, and that Ms. Gilbert's claims were going to be dismissed with prejudice.

Under such circumstances – that is, where an attorney is aware that he committed a procedural error that resulted in an unfavorable outcome – there is no triable question with respect to a lawyer's duty to inform his insurer of the potential claim. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 343-44 (7th Cir. 2013) (concluding as a matter of law that a law firm whose associate had failed to deliver an executed sales contract to the seller, jeopardizing the sale, was on notice of a potential malpractice claim); *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399, 411 (D.D.C. 2011) ("[T]he dismissal of a lawsuit because of attorney error would clearly put a lawyer on notice of the possibility of a malpractice claim."); *Ross*, 420 B.R. at 46, 49-50 (holding on summary judgment that an attorney who failed to timely file an answer, leading to a default judgment, was on notice that a malpractice claim might be filed against him).

Paulson & Nace points out that Virginia's caption rule is unevenly enforced, *see* Appellants' Br. 24-25, and that it believed the captioning error would be forgiven on appeal, *see id.* at 7. But these assertions do not create a genuine question as to whether a reasonable attorney would have been on notice of the existence of the error or a potential claim. *See Koransky, Bouwer & Poracky*, 712 F.3d at 343 (noting that law firm was on notice of potential claim even though there was a chance the mistake could be fixed); *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 (3d Cir. 2001) (affirming grant of summary judgment for insurer where attorneys knew that client's complaint was dismissed for lack of activity, even though attorneys believed legal malpractice suit was time-barred).

Relatedly, Paulson & Nace tells us that expert testimony should have been required to determine what a reasonable

attorney might have foreseen. But this misses the point. It is true that expert testimony is routinely required in legal malpractice actions where lay jurors are ill-equipped to evaluate the merits of an attorney's strategic decisions. *See O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982); *Applegate v. Dobrovir, Oakes & Gebhardt,* 628 F. Supp. 378, 382 (D.D.C. 1985) (ruling that the complexity of client's claim, the extensive attorney preparations and pretrial rulings, and the difficulty of evaluating last-minute settlements rendered malpractice issue "not cognizable by layman judging on the basis of common knowledge and common sense, unaided by expert testimony"), *aff'd*, 809 F.2d 930 (D.C. Cir. 1987). But no expert testimony is required if an "attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *Forti v. Ashcraft & Gerel*, 864 A.2d 133, 138 (D.C. 2004) (quoting *O'Neil v. Bergan*, 452 A.2d at 341) (internal quotation mark omitted).

The Virginia state court did all the expert legal work needed here in dismissing the cases based on Paulson & Nace's procedural error prior to decision on the merits. Nothing more than this dismissal with prejudice – which can be explained to a jury through lay testimony and court records – was needed to establish that Gilbert's legal malpractice claim was reasonably foreseeable.[3]

---

[3] Appellants do not cite any cases holding that expert testimony is necessary to determine when a law firm should have known to notify its professional liability insurer of a possible claim, and we have not found any such cases. To the contrary, there are many cases in which no such testimony has been required. *See*, *e.g.*, *Koransky, Bouwer & Poracky*, 712 F.3d 336; *Capitol Specialty*, 793 F. Supp. 2d 399; *Ross*, 420 B.R. 43; *City of Brentwood, Mo. v. Northland Ins. Co.*, 397 F. Supp. 2d 1143 (E.D. Mo. 2005).

**B.**

We next turn to Paulson & Nace's contention that Chicago Insurance forfeited its right to a known risk denial of coverage by failing to comply with Virginia Code § 38.2-2226, which requires a liability insurer that discovers a breach of the terms or conditions of an insurance contract by the insured to notify a claimant "within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later." The District Court correctly rejected this argument, concluding that District of Columbia law governed this contract between the D.C.-based law firm and its Illinois-based insurer. *See Chicago Ins. Co.*, 37 F. Supp. 3d at 290-92 (concluding that the "government interest" test heavily favored application of D.C. law, in light of appellants' residence and professional activities in the District of Columbia, among other factors) (citing *Adolph Coors Co. v. Truck Ins. Exch.*, 960 A.2d 617, 620-21 (D.C. 2008)). The parties agree that there is no notice-to-claimant requirement under D.C. law.

Perhaps recognizing that the government interest test clearly favors the application of D.C. law, Paulson & Nace does not argue that the contract is *always* governed by Virginia law, but rather that Virginia's notice-to-claimant provision somehow alters the parties' obligations *in this particular case* because the underlying lawsuits were filed in Virginia. *See* Appellants' Br. 10-11, 16. The firm cites no on-point case law to support this argument. We do not strain to find such authority, because even if Virginia law could be invoked, Virginia courts have made clear that Section 38.2-2226 may not be enforced by the insured – here, Paulson & Nace – against its insurer. *See Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 488-91 (1984) (holding that the predecessor statute of VA Code § 38.2-2226 could not be used by insured party against insurer); *Great Am. Ins. Co. v. Gross*,

Civil Action No. 3:05-0159, 2008 WL 376263, at \*11 (E.D. Va. Feb. 11, 2008) ("[Section] 38.2-2226 serves to protect claimants, who are strangers to the contract, and not the insured"); *see also Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 226 (4th Cir. 1999) (explaining that § 38.2-2226 applies when a claimant unable to collect a judgment from an insured party sues an insurer directly under Va. Code § 38.2-2200).[4]

## C.

Finally, Paulson & Nace argues that a reasonable jury could have found that Chicago Insurance waived its right to deny coverage by failing to timely inform the firm of its intention. "Waiver is an act or course of conduct by the insurer which reasonably leads the insured to believe that the breach will not be enforced." *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 750 (D.C. Cir. 2000) (quoting *Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 654 (D.C. 1984)) (internal quotation mark omitted). Waiver of one's rights generally requires actual knowledge of those rights. *Travelers Indem. Co.,* 770 A.2d at 992 ("Ordinarily, a waiver requires an intentional relinquishment of a known right.") (internal quotation marks omitted); *see also Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011) ("Waiver refers to a party's intentional

---

[4] It is not clear whether Sarah Gilbert could have brought a claim on her own behalf against Chicago Insurance, as the insurance policy was issued in Illinois and delivered in Washington, D.C. *Cf.* Va. Code § 38.2-2200 (requiring only that policies "issued or delivered" in Virginia allow direct suits by claimants). In any event, Ms. Gilbert's right to a direct suit against Chicago Insurance was neither litigated below nor raised in this appeal, which relates solely to Paulson & Nace's rights under the insurance contract.

relinquishment or abandonment of a known right.") (internal quotation marks omitted).

Paulson & Nace does not contend that Chicago Insurance had actual knowledge of its known risk defense prior to November 2011, but rather argues that this is irrelevant. Appellants' Br. 28-29. The law firm asserts that the relevant date is March 2010, when Chicago Insurance received documents that contained the correct dates of the medical malpractice proceedings. Thus, according to Paulson & Nace, Chicago Insurance had constructive knowledge of its defense nearly two years before invoking it.

There may be instances under D.C. law in which constructive knowledge suffices to result in waiver. *See*, *e.g.*, *Gov't Emps. Ins. Co. v. Govan*, 451 A.2d 884, 886 (D.C. 1982) (holding that an insurer had constructive knowledge of insured's driving history, where the insurer possessed actual knowledge that the insured had misrepresented her driving record on her insurance application, and where a reasonable inquiry would have revealed the insured's true driving record). But this is not such a case. Paulson & Nace initially informed Chicago Insurance that the alleged malpractice occurred within the policy period, *see* Incident Information Form, J.A. 254, and it never expressly alerted the insurer to its error. Chicago Insurance was under no duty during the preliminary stages of the claim process to sift and verify the information provided by Paulson & Nace. *See Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 90 (D.D.C. 2005) (noting that under D.C. law, an insurer "generally has the right to rely on statements made in an insurance application; the insurer need not conduct an independent investigation unless it has reason to doubt the statements"). Because there is no genuine question as to Chicago Insurance's actual knowledge, and because Paulson & Nace has not cited any reason why knowledge should be

imputed here, its waiver argument can be rejected as a matter of law.[5]

## IV.

For the foregoing reasons, Chicago Insurance was entitled to summary judgment in this case and the District Court's decision awarding summary judgment in its favor is:

*Affirmed*.

---

[5] Furthermore, as the District Court observed, Chicago Insurance had not undertaken any meaningful defense of Paulson & Nace before it reserved its rights. *Chicago Ins. Co.*, 37 F. Supp. 3d at 295-96. It therefore is highly doubtful that the insurance company can be said to have engaged in "an act or course of conduct . . . which reasonably [led] the insured to believe that the breach will not be enforced." *Williams*, 225 F.3d at 750 (quoting *Diamond Serv.*, 476 A.2d at 654).