# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 20-3432

———————————————

ALPS Property & Casualty Insurance Company

*Plaintiff - Appellee*

v.

Bredahl & Associates, P.C.; Jeff A. Bredahl

*Defendant*s

Legacy Steel Building, Inc.; Wane Engkjer; Bruce Engkjer

*Defendants - Appellants*

———————

Appeal from United States District Court
for the District of North Dakota - Eastern

———————

Submitted: October 21, 2021
Filed: January 28, 2022

———————

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

ALPS Property & Casualty Insurance Company ("ALPS") sought a declaratory judgment that its insurance policy did not cover a malpractice suit

against two of its insureds, Jeff A. Bredahl and the Bredahl Firm. The district court[1] granted summary judgment for ALPS. Legacy Steel Building, Inc., Wane Engkjer, and Bruce Engkjer—the parties who originally sued Bredahl and his firm for malpractice—opposed summary judgment and now appeal. Having jurisdiction under 28 U.S.C. § 1291, this Court affirms.

## I.

The history of this appeal includes three lawsuits and many parties. It begins in 2015.

Legacy Steel Building, Inc. is a North Dakota construction company. Wane Engkjer is its president and Bruce Engkjer, its vice president. Elite Inspection Services, Inc. hired Legacy to build a steel structure.

On August 12, 2015, Elite sued Legacy and both Engkjers (collectively, "Legacy Defendants") in North Dakota state court for breach of contract. Legacy, through Wane, contacted Jeff A. Bredahl, a North Dakota attorney who owns the Bredahl Law Firm (collectively, "Bredahl"), about representing the Legacy Defendants in the Elite lawsuit. On October 1, 2015, Bredahl received a $5,000 check from Legacy.

On December 30, 2015, and February 26, 2016, Bredahl appeared on behalf the Legacy Defendants at court hearings in the Elite suit. On March 3, 2016, the state court scheduled trial for March 13, 2017. On July 14, 2016, Elite filed a motion to compel discovery because the Legacy Defendants had not responded to discovery requests. Bredahl received the motion. The Legacy Defendants did not respond to it, and the state court entered a discovery order in favor of Elite on August 10, 2016. Among other things, that order banned the Legacy Defendants from putting on any

---

[1] The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

evidence at trial that they had not produced in discovery to Elite.  Bredahl received a copy of the order but did not open it.

On March 10, 2017, Wane, Bredahl, and Nicole Bredahl, another attorney at Bredahl's law firm, met to discuss seeking a continuance of the trial. Until then, Wane believed Bredahl was representing the Legacy Defendants in the Elite suit and did not know about the impending trial.  At the meeting, Wane signed an affidavit stating, "We have retained Blake Hankey from Hankey Law to represent us." **W. Engkjer Aff.** ¶ 6, DCD 1-10.  Nicole Bredahl notarized it.  That same day, Blake Hankey filed a motion to continue the trial.  Bredahl told Wane that the Legacy Defendants did not need to attend trial because the motion would be granted. However, the state court denied the motion, criticizing its basis as attorney "inattentiveness."  **Order** ¶ 4, DCD 28-15.  On March 13, 2017, the court held trial as scheduled.  Neither the Legacy Defendants, nor Bredahl, nor any counsel for the Legacy Defendants, attended the trial.  Based on Elite's trial evidence, the state court entered judgment on March 21, 2017, in favor of Elite for just over $1 million, and held the Engkjers personally and individually liable.  Elite served Wane and Bruce with the judgment on March 22, 2017.  Bredahl also received a copy of the judgment through the court's electronic filing system.

With new counsel, the Legacy Defendants filed a motion to vacate the judgment. The court denied it in December 2017.  The Legacy Defendants appealed on January 3, 2018.  Around September 2018, Elite and the Legacy Defendants agreed to settle the suit and dismiss the appeal.  The Legacy Defendants paid Elite $575,000.

Separately, Bredahl applied for an insurance policy with ALPS, executed the application on July 20, 2017, and submitted the application on October 2, 2017.  On October 25, 2017, ALPS issued an insurance policy ("Policy") to Bredahl for the effective dates October 1, 2017, to October 1, 2018.  The Policy provided loss inclusion starting October 1, 2016.

In January 2018, the Legacy Defendants' counsel notified ALPS of a potential claim from Bredahl's involvement in the Elite suit. The Legacy Defendants sued Bredahl and Hankey in state court for negligence, breach of fiduciary duty, and misconduct on April 8, 2019 ("Legacy suit").

On April 19, 2018, ALPS gave Bredahl an initial assessment of coverage. Over a year later, on August 20, 2019, Bredahl notified ALPS of the Legacy suit, including a copy of the complaint. On September 4, 2019, ALPS informed Bredahl that it would defend that suit under the Policy subject to a complete reservation of rights.

On September 12, 2019, ALPS filed the instant suit ("coverage suit") in federal district court, seeking a declaratory judgment that the Policy does not apply to Bredahl with respect to the Legacy suit, ALPS had no duty to defend or indemnify for the Legacy suit, and ALPS was entitled to reimbursement of its defense costs in the Legacy suit.

On February 4, 2020, the Legacy Defendants and Bredahl settled the Legacy suit in a *Miller-Shugart* agreement.

ALPS eventually filed a motion for summary judgment in the coverage suit. The district court granted the motion, holding that ALPS had no duty to indemnify Bredahl for damages from the Legacy suit and no duty to defend Bredahl. The Legacy Defendants appeal, challenging only the court's ruling that the Policy does not cover damages from the Legacy suit. Bredahl does not appeal.

This Court reviews de novo a grant of summary judgment. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

II.

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012).

The parties agree that North Dakota law controls this insurance dispute. Insurance policy interpretation is a question of law. *Forsman v. Blues, Brews & Bar-B-Ques, Inc.*, 903 N.W.2d 524, 530 (N.D. 2017). North Dakota courts "look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, [courts] apply the plain, ordinary meaning of the term in interpreting the contract." *K & L Homes, Inc. v. Am. Fam. Mut. Ins. Co.*, 829 N.W.2d 724, 728 (N.D. 2013) (quotation omitted); *Tibert v. Nodak Mut. Ins. Co.*, 816 N.W.2d 31, 35 (N.D. 2012) (same). "Exclusions from coverage in an insurance contract must be clear and explicit and are strictly construed against the insurer." *Tibert*, 816 N.W.2d at 35. However, the party asserting coverage bears the burden of proof. *Forsman*, 903 N.W.2d at 531.

The ALPS Policy provides legal professional liability insurance for a "Claim" and applies to Bredahl himself as an insured. **Policy** at 1, 6, DCD 1-2. The Policy defines "Claim" as "a demand for money or services . . . against the Insured . . . ." *Id.* at 8. Under Policy § 1.1.2, the Policy states that ALPS "agrees to pay on behalf of the Insured" damages for claims "provided that," among other things, "at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim." *Id.* at 6.

-5-

Thus, the Policy does not apply to damages from the Legacy suit claim against Bredahl if Bredahl—an "Insured"—knew or reasonably should have known, as of the October 1, 2017 effective date, that his conduct during the Elite suit might be the basis for a "demand for money" against him.

The parties do not dispute that language of these provisions is clear and unambiguous. Although North Dakota courts appear to have not assessed the meaning of insurance provisions like Policy §§ 1.1.2, the parties agree that these provisions are properly assessed under a two-prong, subject-objective test—which the district court applied. *See Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) (stating test); **Summary Judgment Order** at 11, DCD 34 (applying test). Circuit courts consistently apply this test for coverage disputes about similar legal-malpractice insurance policy terms. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 343 (7th Cir. 2013); *Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 Fed. Appx. 241, 245 (6th Cir. 2012); *Ross v. Cont'l Cas. Co.*, 393 Fed. Appx. 726, 727 (D.C. Cir. 2010) (affirming application of test).

Under the test's first prong, an insured must have "actual knowledge, or subjective awareness, of the relevant suit, act, error, or omission." *Colliers*, 458 F.3d at 237. If the first prong is met, the analysis proceeds to the second, objective prong, which requires that this "act, error, or omission might reasonably be expected to result in a claim or suit." *Id.* If both prongs are met, the insurance policy does not provide coverage for the disputed claim. *See, e.g.*, *Koransky*, 712 F.3d at 345. This test aptly applies here because Policy § 1.1.2 requires no insured "knew or reasonably should have known" that an act or omission "might be the basis" of a claim, **Policy** at 6, DCD 1-2, which effectively requires an insured (1) knew that an act or omission occurred, and (2) knew or reasonably should have known it could lead to a claim.

The first prong is met here because Bredahl subjectively knew before the Policy effective date that: the Legacy Defendants thought he was representing them

in the Elite suit, he and they did not appear at trial after Bredahl told them the trial would be continued, they lost the suit, and they had a judgment of over one-million dollars entered against them. On appeal, the Legacy Defendants present no genuine issue of material fact regarding this.

The following facts are undisputed:

1. The Legacy Defendants gave Bredahl a $5,000 check in October 2015, after the Elite suit began.

2. Bredahl appeared for the Legacy Defendants at two court hearings in the Elite suit, in December 2015 and February 2016.

3. No other attorney appeared for the Legacy Defendants at these two hearings.

4. On March 8, 2017, Bredahl received emails about the upcoming trial from the state-court clerk of court.

5. On March 10, 2017, Bredahl learned that the Legacy Defendants thought that Bredahl had been representing them and did not know of the trial set to start in three days. *See* **Bredahl Dep.** at 79:5-18, DCD 29-1 (stating Wane Engkjer "started panicking" when Bredahl wished him "good luck" at trial scheduled for the following week); **W. Engkjer Aff.** ¶¶ 15-16, DCD 1-9 (confirming he had "no idea" about the impending trial until Bredahl told him on March 10, 2017). *See also* **Legacy Br.** at 28 (acknowledging Bredahl was "then aware that Wane Engkjer was not prepared to go to trial, nor did he have counsel"); *id.* at 29 (asserting that until March 8, 2017, Bredahl "thought . . . that Legacy had retained a different attorney").

6. On March 10, 2017, Bredahl told Wane that the Legacy Defendants did not need to attend trial because the court would grant a motion to continue filed that day. *See* **W. Engkjer Aff.** ¶ 18, DCD 1-9.

7. That same day, Hankey agreed to represent the Legacy Defendants only on the condition that the motion to continue would be granted. *See* **Mot. Continue** ¶ 1, DCD 1-10 (stating Hankey "agreed to" represent the Legacy Defendants in the Elite suit "on the condition that this case is continued for a period of 6 months").

8. On March 13, 2017, Bredahl learned that the court did not grant the motion to continue. **Bredahl Dep.** at 98:6-21, DCD 29-1.

9. On March 22, 2017, Bredahl received both the order denying the motion to continue and the entry of judgment against the Legacy Defendants. *See id.* at 101:10-17.

These undisputed facts show that Bredahl knew—before the Policy's October 1, 2017, effective date—facts that constitute an error or omission: he had not litigated on behalf of the Legacy Defendants in the Elite suit even though they thought he was doing so, he gave them advice that led to them making no defense at trial, and they incurred a significant judgment in March 2017.

Although Bredahl may have felt that he made clear he was not representing the Legacy Defendants in the Elite suit well before trial, his perception does not matter. *See* **Legacy Br.** at 24 ("Bredahl assumed that his involvement was quite limited, and that he had no liability for the resulting judgment against Legacy."). The Policy and the first prong of the test require only that Bredahl knew of acts or omissions, not that he feel responsible for his client's loss. *See* **Colliers**, 458 F.3d at 237 (interpreting similar insurance policy to require only knowledge of the relevant act or omission at the first prong).

The cases cited by the Legacy Defendants are unpersuasive. This is not the rare instance in which an insured never received a client's demand letter threatening a forthcoming malpractice suit over a brief, otherwise banal, initial representation and case consultation. *See Petersen v. TIG Ins. Co.*, No. 8:01CV308, 2002 WL 31413808, at *2, 4, 8 (D. Neb. Oct. 28, 2002). Nor did the insured here receive a letter notifying him of malpractice claims against other, outside attorneys in a case in which he had briefly participated four years ago, then research the case, find misdeeds only by outside attorneys, and conclude there could be no basis for a claim against him even if his former client later decided to pursue one. *See Gonakis v. Medmarc Cas. Ins. Co.*, 722 Fed. Appx. 529, 533 (6th Cir. 2018).

The second prong is met here because an attorney in Bredahl's position reasonably should have known that his involvement in the Elite suit "might be the basis of a" claim against him. *See Colliers*, 458 F.3d at 237 (stating second prong met where the "act, error, or omission might reasonably be expected to result in a claim"); *see also* **Policy** at 6, DCD 1-2 (requiring under § 1.1.2 that, "at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim"). The undisputed facts above compel this conclusion.

First, an attorney reasonably should know that a client might bring a claim against the attorney if the client thought the attorney was representing them, did not attend trial on the attorney's advice, and then lost a million-dollar judgment. *See Schwartz*, 483 Fed. Appx. At 246 (finding reasonable attorney would have recognized possible claim where law firm failed to appear at trial and client lost as a result).

Second, under North Dakota law, "[t]he elements of a legal malpractice action" are (1) an attorney-client relationship; (2) a duty by the attorney to the client; (3) a breach of that duty by the attorney; and (4) "damages to the client proximately caused by the breach of that duty." *Richmond v. Nodland*, 501 N.W.2d 759, 761 (N.D. 1993). Bredahl received $5,000 from the Legacy Defendants, no one else had

appeared on their behalf at the hearings he attended, and they had not retained counsel on the eve of trial. On these facts, a reasonable attorney would have known that the Legacy Defendants might have thought that: (1) he had an attorney-client relationship; (2) a duty to them; (3) breached that duty by not preparing for trial or adequately notifying them well before trial that he would not appear; and (4) that this breached caused damages—the judgment in favor of Elite. A reasonable attorney therefore would have known that Bredahl's role in the Elite suit might be the basis for a claim. Even if Bredahl could prove on the merits of a malpractice case that there was no attorney-client relationship or duty because he sent a letter in March 2016 stating that he could no longer be involved in the Elite suit, *see* **Letter**, DCD 1-10, his ability to prevail against a malpractice claim does not change the possibility of a claim.

Third, the Legacy Defendants themselves acknowledge the present facts support a malpractice claim. They state, "[A]n attorney's failure to appear at a scheduled trial is a clear basis for a malpractice claim . . . ." **Legacy Br.** at 28. This assessment further supports the inference that a reasonable attorney in Bredahl's position would have known that the Legacy Defendants might bring a claim.

Finally, the Legacy Defendants assert that, as of October 1, 2017, Bredahl did not think the Legacy Defendants would sue him because he thought that he had represented them on a limited basis and they were not his client for the Elite suit. *See* **Legacy Br.** at 28-29. However, Bredahl's subjective expectation defies North Dakota's Rules of Professional Conduct and is irrelevant under the Policy. North Dakota Rule of Professional Conduct 1.2(c) states: "A lawyer may limit the scope of the representation if the client consents in writing after consultation." **N.D. R. Prof. Conduct. 1.2(c)**. Bredahl admitted that he had no written document where the Legacy Defendants consented to a limited representation. **Bredahl Dep.** at 41:8-23, DCD 29-1. As a result, Bredahl had not taken the required step necessary to preclude the Legacy Defendants from being his client for the full Elite suit. Moreover, the Policy requires only facts that "might be the basis of a [c]laim," **Policy** at 6, DCD 1-2, and defines claim as a "demand for money or services," *id.* at 8. The Policy thus

imposes no qualification based on the likelihood or merit of a claim; the Policy requires only facts that might lead to a demand for money. Bredahl's personal expectations have no bearing on whether a reasonable person would know the Elite suit might be the basis of the claim. *See Selko v. Home Ins. Co.*, 139 F.3d 146, 152 (3d Cir. 1998) (concluding attorney's subjective beliefs were irrelevant at the second, objective prong); *Chicago Ins. Co. v. Paulson & Nace, PLLC*, 783 F.3d 897, 901 (D.C. Cir. 2015) (finding attorneys' subjective belief that error could be fixed irrelevant to second prong); *Koransky*, 712 F.3d at 343 (same).

Because there is no genuine dispute of material fact that, before October 1, 2017, Bredahl knew of acts or omissions in the Elite suit and that he reasonably should have known the Legacy Defendants might bring a claim against him, this Court affirms the district court's grant of summary judgment for ALPS.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____