2017 ND 266

Carol FORSMAN, Creditor
and Appellee

v.

BLUES, BREWS AND BAR-B-QUES,
INC., dba Muddy Rivers, and Amanda
Espinoza, Debtors

and

United Fire & Casualty Company,
Garnishee and Appellant

No. 20170088

Supreme Court of North Dakota.

Filed 11/16/2017

526

Craig E. Johnson (argued) and Jared J. Hines (appeared), Fargo, ND, for creditor and appellee.

Kendra E. Olson (argued) and H. Morrison Kershner (appeared), Fergus Falls, MN, for garnishee and appellant.

Crothers, Justice.

[¶1] United Fire & Casualty Company appeals from a district court judgment awarding Carol Forsman $249,554.30. in her garnishment action against United Fire, commenced after she settled claims in the underlying suit against Blues, Brews and Bar-B-Ques, Inc., d.b.a. Muddy Rivers. We conclude the court erred in granting summary judgment because material fact issues exist on whether exclusions for "assault and battery" and "liquor liability" in the commercial general liability ("CGL") policy exclude coverage of Forsman's negligence claim against Muddy Rivers. We further conclude the court properly granted summary judgment to Forsman holding United Fire had a duty to defend Muddy Rivers under the CGL policy in the underlying suit. We affirm in part, reverse in part and remand for further proceedings.

I

[¶2] Muddy Rivers is a bar in Grand Forks that was insured by United Fire under. a CGL policy. In 2010, Forsman sued Muddy Rivers and Amanda Espinoza seeking damages for injuries to her leg allegedly sustained while a guest at a Feb-

ruary 2010 private party at Muddy Rivers. Muddy Rivers notified United Fire of the suit and requested coverage. United Fire denied defense and indemnification based on the policy's exclusions for assault and battery and liquor liability. In 2011, the district court held a trial on Forsman's claims. After Forsman rested her case, the district court granted Muddy Rivers' motion for judgment as a matter of law, dismissing Forsman's claims. Forsman appealed.

[¶3] In *Forsman v. Blues, Brews and Bar-B-Ques, Inc.*, 2012 ND 184, ¶¶ 1, 19, 820 N.W.2d 748 ("*Forsman I*"), we reversed and remanded, concluding Forsman presented sufficient evidence on her dram shop and premises liability claims to defeat Muddy Rivers' motion for judgment as a matter of law. We summarized relevant facts adduced at trial as follows:

> "At trial, Forsman called several witnesses who were present at the party. Forsman presented evidence that Muddy Rivers provided an open bar for its off-duty employees and guests, including a 'shot-drinking' contest that was primarily participated in by off-duty employees. Solberg, the bar manager, testified he was at the party and participated in the contest. Solberg also testified Muddy Rivers used three bartenders at the party, including a regular customer and his son, but Solberg did not supervise the bartenders.

> "Forsman testified she was helping Richard Martin, a Muddy Rivers' employee attending the party, care for an intoxicated person, Rose Christianson, when Espinoza's actions resulted in Forsman being pushed to the ground. Christianson was a Muddy Rivers' employee and had invited Espinoza to the party. Forsman testified she was 'one hundred percent sure' Espinoza pushed her off her chair to the ground, resulting in a leg fracture. According to Forsman, she was not able to get up and two Muddy Rivers' employees thereafter grabbed Espinoza. Martin testified he heard a 'voice say something to the effect of "What are you doing to my friend?"' and heard a commotion but did not see what happened. Martin testified he then heard Forsman ask for help and saw her on the floor. Forsman testified she saw Espinoza earlier at the party when there was some 'commotion' and Solberg asked Espinoza to leave the party, but she did not leave. Forsman also testified she saw Espinoza drinking beer at Muddy Rivers earlier that night and 'notice[d] ... signs that would suggest that [Espinoza] was obviously intoxicated.' Forsman testified she filed a complaint against Espinoza with the Grand Forks Police Department and two police officers, Detective Travis Benson and Officer Holweger, investigated the incident. However, the Grand Forks County State's Attorney's Office declined to pursue aggravated assault charges against Espinoza."

*Forsman I*, at ¶¶ 4–5 (emphasis added).

[¶4] We reversed and remanded, holding Forsman's testimony raised disputed fact issues under N.D.C.C. § 5–01–06.1 (dram shop law) about whether Muddy Rivers knowingly provided alcoholic beverages to an obviously intoxicated Espinoza and whether Espinoza caused Forsman's injuries. *Forsman I*, 2012 ND 184, ¶ 11, 820 N.W.2d 748. We also declined to hold as a matter of law, "on the record in this case," that Forsman failed to establish Muddy Rivers breached a duty of care for premises liability under N.D.C.C. § 9–10–06 (requiring a person to exercise ordinary care or skill in the management of the person's property). *Forsman I*, at ¶¶ 12–14. We specifically held Forsman could pursue her negligence claim for premises liability

against Muddy Rivers on remand. *Id.* at ¶ 14. Before a new trial was held on remand, Forsman and Muddy Rivers settled the case with a *Miller-Shugart* agreement, in which Muddy Rivers admitted negligence and liability but limited collection on the judgment to Muddy Rivers' insurer, United Fire. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982); *Sellie v. N.D. Insur. Guar. Ass'n.*, 494 N.W.2d 151 (N.D. 1992) (recognizing *Miller-Shugart* settlements in North Dakota). The district court entered judgment against Muddy Rivers based on the agreement. Forsman subsequently obtained a default judgment against Espinoza.

[¶5] In April 2016, Forsman moved the district court for leave to file a supplemental complaint seeking garnishment against United Fire, which was granted. She moved for partial summary judgment, asserting the United Fire CGL policy provides coverage for her premises liability claim against Muddy Rivers. United Fire made a cross-motion for summary judgment on its duty to defend and indemnify under the CGL policy, arguing no coverage exists based on the policy's assault and battery exclusion. Forsman responded, contending coverage was not precluded under either the assault and battery exclusion or the liquor liability exclusion.

[¶6] The district court granted partial summary judgment in favor of Forsman, concluding the CGL policy provided coverage for Forsman's claims against Muddy Rivers and obligating United Fire to defend Muddy Rivers. The court based its coverage decision on this Court's earlier decision in *Forsman I* that held Forsman could pursue her negligence claim for premises liability against Muddy Rivers. 2012 ND 184, 820 N.W.2d 748. In November 2016, the court held a trial on the reasonableness of the *Miller-Shugart* settlement. The court ruled in Forsman's fa-

vor, finding the settlement amount was reasonable and entering judgment against United Fire for $249,554.30.

II

[¶7] At the outset, we discuss the effect of the parties' *Miller-Shugart* agreement and judgment establishing Muddy Rivers' liability on the present garnishment proceedings against United Fire. In *Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D. 1996), we explained:

"Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), an insured defendant may stipulate for settlement of a plaintiff's claims and stipulate judgment may be collected only from the proceeds of any insurance policy, with no personal liability to the defendant. The stipulated judgment is not conclusive on the insurer. The plaintiff judgment creditor must show the settlement was reasonable and prudent."

(Emphasis added.) As the court in *Nelson v. Am. Home Assur. Co.*, 702 F.3d 1038, 1041 (8th Cir. 2012), explained:

"While a *Miller-Shugart* judgment settles the issue of the underlying defendant's liability to the plaintiff, it does not resolve the question of whether the insurance policy provides coverage for that liability. Rather, coverage is a threshold issue that the court must address before deciding whether the stipulated judgment is enforceable. *Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 678–79 (8th Cir. 2008); *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990) ('[I]f there is found to be no coverage for the *Miller-Shugart* judgment, that ends the matter.')."

[¶8] Even though Forsman and Muddy Rivers stipulated to the underlying judgment resolving Forsman's negligence claim against Muddy Rivers, this determination is not conclusive on United Fire. *See*

*McPhee v. Tufty*, 2001 ND 51, ¶ 10 n.1, 623 N.W.2d 390; *Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, ¶ 5 n.1, 585 N.W.2d 811. On appeal, United Fire contends the CGL policy does not provide coverage for Forsman's underlying claims, and United Fire has not specifically raised any other issues regarding the reasonableness of the settlement. Although United Fire has not raised other issues about the settlement's reasonableness, Forsman still must establish the CGL policy provides coverage for her negligence claim against Muddy Rivers.

### III

[¶9] Our standard for reviewing summary judgment is well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*K & L Homes, Inc. v. Am. Family Mut. Ins. Co.*, 2013 ND 57, ¶ 7, 829 N.W.2d 724 (quoting *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31).

[¶10] Insurance policy interpretation is a question of law, which is fully reviewable on appeal. *K & L Homes*, 2013 ND 57, ¶ 8, 829 N.W.2d 724. This Court independently examines and construes the insurance contract to decide whether coverage exists. *Id.*; *see also Grinnell Mut. Rein. v. Thies*, 2008 ND 164, ¶ 7, 755 N.W.2d 852. As with other contracts, this Court construes insurance policy language to give effect to the parties' mutual intention at the time of contracting:

"We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others."

*K & L Homes*, at ¶ 8 (quoting *State v. N.D. State Univ.*, 2005 ND 75, ¶ 12, 694 N.W.2d 225) (emphasis omitted). "Exclusions from coverage ... must be clear and explicit and are strictly construed against the insurer." *Schleuter v. N. Plains Ins.*, 2009 ND 171, ¶ 8, 772 N.W.2d 879 (quoting *Nationwide Mut. Ins. Cos. v. Lagodinski*, 2004 ND 147, ¶ 9, 683 N.W.2d 903). While

exclusionary clauses are strictly construed, a contract will not be rewritten to impose liability when the policy unambiguously precludes coverage. *K & L Homes*, at ¶ 8; *Schleuter*, at ¶ 8.

[¶11] In interpreting the insurance policy, this Court first examines the policy's coverages before examining its exclusions. *K & L Homes*, 2013 ND 57, ¶ 9, 829 N.W.2d 724. "If and only if a coverage provision applies to the harm at issue will the court then examine the policy's exclusions and limitations of coverage." *Wisness v. Nodak Mut. Ins. Co.*, 2011 ND 197, ¶ 16, 806 N.W.2d 146 (quoting 1 Robert D. Goodman, John C. Dockery & Matthew S. Hackell, *New Appleman Law of Liab. Ins.* § 1.04[1] (2d ed. 2011) (citations omitted). "An exclusionary provision, or the absence of one, cannot be read to provide coverage that does not otherwise exist." *Id.* Similarly, while an exception to an exclusion results in coverage, "an exception to an exclusion is incapable of initially providing coverage; rather, an exception may become applicable if, and only if, there is an initial grant of coverage under the policy and the relevant exclusion containing the exception operates to preclude coverage." *K & L Homes*, at ¶ 9 (citations omitted).

[¶12] "It is axiomatic that the burden of proof rests upon the party claiming coverage under an insurance policy." *Grzadzielewski v. Walsh Cty. Mut. Ins. Co.*, 297 N.W.2d 780, 784 (N.D. 1980) (quoting *Boedigheimer v. Taylor*, 287 Minn. 323, 178 N.W.2d 610, 614 (1970)); "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).

## IV

[¶13] United Fire argues it has no duty to defend or indemnify Muddy Rivers un-der the CGL policy. United Fire claims Forsman's premises liability claim is excluded from coverage because the underlying "but for" cause of the claim against Muddy Rivers falls under either the policy's assault and battery exclusion or liquor liability exclusion. Forsman responds that this Court's prior decision in this case held she sufficiently pled and could pursue her negligence claim against Muddy Rivers on remand, and that neither policy exclusion precludes coverage.

### A

[¶14] The CGL policy provides liability coverage for "bodily injury" caused by an "occurrence" that takes place in the "coverage territory." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." United Fire contends the policy's plain language excludes coverage for assault, including claims that "arise out of" an assault. This exclusion provides:

"ASSAULT, BATTERY AND NEGLIGENT SUPERVISION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused by or arising out of:

1. Actual, attempted or threatened assault, battery or abuse of any person; or

2. Vicarious liability for the actual, attempted or threatened assault, battery or abuse of any person;

3. The negligent hiring, retention, supervision, or employment of any 'employees' or volunteers of the in-

sured who engages in the actual, attempted or threatened assault, battery or abuse of any person; or

4. Any act or omission caused by or arising out of the actual or attempted suppression or prevention of any actual, attempted or threatened assault, battery or abuse of any person

by or as a result of the direction or instigation of any:

1. Insured;
2. 'Employees' of the insured;
3. Guests or patrons of the insured;
4. Volunteers working for or on behalf of the insured or any guest or patron of the insured."

The CGL policy's assault and battery exclusion therefore states: "This insurance does not apply to 'bodily injury,' ... caused by or arising out of: ... 1.... assault ... of any person; ... by ... any ... 3. Guests or patrons of the insured."

[¶15] United Fire contends the CGL policy precludes coverage because Forsman's premises liability claim "arises out of" Espinoza's assault. United Fire asserts that none of Forsman's allegations at the time the suit was tendered alleged she suffered any injuries other than from Espinoza's assault. Even allowing for conflicting theories, United Fire asserts Forsman never indicated Espinoza did not assault her. United Fire argues that based on the complaint's allegations, the trial testimony and all evidence available to United Fire, Forsman's injuries were caused by or arose out of an assault, thereby excluding coverage and precluding United Fire's duty to defend.

[¶16] United Fire argues the district court erred in denying its summary judgment motion because it presumed premises liability coverage existed and interpreted the "arising out of" language of the

assault and battery exclusion too narrowly. United Fire asserts other jurisdictions construe this language to hold that when the "but for" cause of a negligence claim is excluded from coverage, such as an assault, no coverage exists for premises liability. *See Mount Vernon Fire Ins. Co. v. Creative Hous.*, 93 F.3d 63, 66 (2d Cir. 1996); *Capitol Indem. Corp. v. Blazer*, 51 F.Supp.2d 1080, 1087 (D. Nev. 1999); *see also Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 775 (Iowa 1993); *Essex Ins. Co. v. Yi*, 795 F.Supp. 319, 323–24 (N.D. Cal. 1992); *Stiglich v. Tracks, D.C., Inc.*, 721 F.Supp. 1386, 1387–88 (D.D.C. 1989); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.*, 582 F.Supp. 865, 868–69 (E.D.Pa. 1984); *Gregory v. W. World Ins. Co., Inc.*, 481 So.2d 878, 881 (Ala. 1985); *Kelly v. Figueiredo*, 223 Conn. 31, 610 A.2d 1296, 1298–99 (1992); *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So.2d 965 (Fla. Dist. Ct. App. 1991); *Hernandez v. First Fin. Ins. Co.*, 106 Nev. 900, 802 P.2d 1278, 1280 (1990).

[¶17] We note courts also have held that the "arising out of" language in an exclusion is "satisfied if there is a casual connection between the conduct identified in the exclusion and the injuries for which compensation is being sought." *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 327 (Minn. Ct. App. 2008) (citing *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 419 (Minn. 1997) ("Typically, this court has defined the words 'arising out of' in an insurance policy to mean 'causally connected with' and not 'proximately caused by.' ")); *Roloff v. Taste of Minn.*, 488 N.W.2d 325, 326 (Minn. Ct. App.1992) ("arising out of" language "unambiguously excludes coverage when a claim is causally related to" the conduct described in an assault and battery exclusion clause, even if the actual claim is for negligence); *Ross v. City of Minneapolis,*

408 N.W.2d 910, 912 (Minn. Ct. App. 1987) (the "term 'arising out of' requires only a causal connection; it does not require proximate cause" and the lower court erred in focusing on the negligence theory in applying the exclusion for injury arising out of an assault or battery).

[¶18] Here, Forsman responds that the assault and battery exclusion does not preclude coverage since no evidence shows she was actually assaulted. She concedes limited evidence establishes Espinoza "caused" Forsman to fall to the floor, but argues no evidence exists to infer an intent to injure. Specifically, she claims the Grand Forks police determined that there was insufficient evidence of an assault, that no witnesses testified they saw or overheard an assault and that Forsman did not see what happened. She asserts that her complaint and her trial counsel's opening statement at the initial trial are not evidence, and that neither she nor her attorney had authority to make binding admissions for Muddy Rivers. Forsman argues her cause of action against Muddy Rivers is "no different" than if she "slipped on a wet floor or banana peel" and that the bar had a legal duty to exercise reasonable care to protect her from harm. *See* N.D.C.C. § 9–10–06. She also asserts that a jury "could have" found Espinoza's accidental or negligent acts caused her damages and that Muddy Rivers was responsible based on a failure to exercise reasonable care to discover such acts are being done, or likely to be done, or giving a warning adequate to enable Forsman to avoid the harm or otherwise protect herself against it.

[¶19] Here, in granting Forsman summary judgment on coverage, the district court provided no analysis of the CGL policy's exclusions and relied only on our prior disposition remanding the underlying case for trial. Contrary to the district court conclusions, however, our decision in *Forsman I* remanded for Forsman to pursue her "negligence claim" for premises liability under N.D.C.C. § 9–10–06, and did not dispose of either Muddy Rivers' liability to Forsman or whether United Fire's CGL policy provides coverage. 2012 ND 184, ¶ 14, 820 N.W.2d 748. After the initial remand, rather than proceeding to trial, Forsman and Muddy Rivers stipulated to the judgment, which is not conclusive on United Fire. In making cross-motions for summary judgment, Forsman and United Fire each raised disputed facts and competing inferences which are relevant to coverage.

[¶20] In *Forsman I*, we held disputed fact issues existed about "whether Muddy Rivers knowingly provided alcoholic beverages to an obviously intoxicated Espinoza and whether Espinoza caused Forsman's injuries." 2012 ND 184, ¶ 11, 820 N.W.2d 748. The record developed at trial was unclear about the circumstances surrounding the cause of Forsman's injuries. Because the district court granted judgment as a matter of law under N.D.R.Civ.P. 50 during trial, and no retrial occurred on remand, these factual issues have not been resolved. Although United Fire contends Forsman is bound by judicial admission that Espinoza in fact assaulted her, we have held such admissions are matters for the factfinder. "[T]estimony unfavorable to one's own contention can be a 'judicial admission' if it is 'deliberate, clear and unequivocal.'" *Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 19, 693 N.W.2d 1 (quoting *Malarchick v. Pierce*, 264 N.W.2d 478, 480 (N.D. 1978)). "The majority rule, adopted in North Dakota, states the trier of fact has the responsibility of deciding the issue based on all the evidence, even when a party gives testimony that conflicts with her position." *Id.*

[¶21] On this record, genuine issues of material fact exist about whether Forsman's injuries constitute bodily injury "caused by or arising out of" an "assault" of Forsman by Espinoza. Therefore, summary judgment is not appropriate on whether the assault and battery exclusion precludes coverage.

## B

[¶22] United Fire argues the liquor liability exclusion independently excludes coverage, eliminating any potential coverage for a claim and its duty to defend its insured.

[¶23] Generally, a liquor liability exclusion was intended to apply "to bodily injury or property damage related to the furnishing or sale of alcoholic beverages" and "to require any insured in the business of manufacturing, selling, or serving alocholic beverages to purchase separate coverage." 2 David L. Elkind et al., *New Appleman Law of Liab. Ins.* § 9.05[3] (2d ed. 2014). "It is not intended to remove coverage for a typical insured business or other enterprise which may serve or furnish alcoholic beverages at various times in ways that are incidental to its primary business or other objectives." *Id.* For example, in *Curbee, Ltd. v. Rhubart*, 406 Pa.Super. 505, 594 A.2d 733, 736 (1991), the court held a liquor liability exclusion barred coverage even when the liquor licensee, operating as a restaurant, provided alcohol for consumption at an employee appreciation luncheon away from its premises and without remuneration.

[¶24] This exclusion provides:

"AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c. 'Bodily injury' or 'property damage' for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license;

(b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if license is required for such activity."

[¶25] United Fire argues Forsman's complaint reflects a nexus between serving alcohol and the assault on Forsman, thus the plain language of the liquor liability exclusion precludes coverage. Relying on *Cont'l W. Ins. Co. v. The Dam Bar*, 478 N.W.2d 373 (N.D. 1991), United Fire contends Forsman's claim, despite being presented as a negligence action, is for "bodily injury" resulting from Muddy Rivers "[c]ausing or contributing to the intoxication of any person." United Fire argues no possibility exists for coverage of the claim.

[¶26] Forsman responds the liquor liability exclusion does not apply, and relies on the last part of the exclusion stating it only applies if you: "(3) Serve, or furnish alco-

holic beverages without a charge, if license is required for such activity." She asserts the evidence showed Muddy Rivers was closed to the public, it provided an open bar for its off-duty employees and guests, and primarily off-duty employees participated in the shot-drinking contest. She asserts no license was required for that activity because Muddy Rivers was serving or furnishing alcoholic beverages without charge. Forsman cites Grand Forks City Code § 21–0202(1) ("No person shall sell at retail within the city limits of Grand Forks any alcoholic beverages without first having obtained a license therefor as herein provided."). She contends the undisputed evidence is that the event was a holiday party, the bar was not charging for drinks, and the fact the bar was licensed to serve alcohol is irrelevant.

[¶27] Although it is unclear whether the district court took judicial notice of Forsman's cited ordinance, *see City of Grand Forks v. Jacobson*, 2016 ND 173, ¶ 11, 883 N.W.2d 899, we reject her assertion that whether the bar was licensed is irrelevant to whether the exclusion applies. While Forsman contends Muddy Rivers did not need a license for the private party with free alcohol, it is undisputed that Muddy Rivers was a bar regularly engaged in serving or furnishing alcoholic beverages for a charge. In other words, Muddy Rivers did not cease being a licensed bar for purposes of the after-hours holiday party.

[¶28] Thus, while this exclusion may apply to Muddy Rivers, the specific policy language provides that it excludes coverage for "bodily injury . . . for which any insured may be held liable by reason of: . . . [c]ausing or contributing to the intoxication of any person[.]" As discussed, our prior decision held disputed fact issues existed as to whether Muddy Rivers knowingly provided alcoholic beverages to an obviously intoxicated Espinoza and wheth-

er Espinoza caused Forsman's injuries. *Forsman I*, 2012 ND 184, ¶ 11, 820 N.W.2d 748. Again, these disputed factual issues were never resolved on remand. Therefore, genuine issues of material fact exist as to whether Forsman's injuries were such bodily injury for which Muddy Rivers may be held liable by reason of "[c]ausing or contributing to the intoxication of any person."

[¶29] Because genuine issues of material fact exist regarding application of the CGL policy's exclusions, the district court erred in granting partial summary judgment on the issue of coverage for Forsman's negligence claim against Muddy Rivers.

## V

[¶30] United Fire argues it has no duty to defend Muddy Rivers in the underlying claim because no potential for coverage exists. However, because genuine issues of material fact preclude summary judgment on United Fire's duty to indemnify Muddy Rivers under the CGL policy, we separately address its duty to defend under the policy.

[¶31] An insurer's duty to defend is broader than its duty to indemnify and is determined by the injured claimant's allegations. *Farmers Union Mut. Ins. Co. v. Decker*, 2005 ND 173, ¶ 13, 704 N.W.2d 857. An insurer's duty to defend and duty to indemnify its insured "are two separate and distinct contractual obligations, and are determined by applying different standards." *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 33, 816 N.W.2d 31. Regarding the duty to defend, "[a]n insurer does not have a duty to defend unless there is a <u>possibility of coverage</u> contained in the allegations of the claimant's complaint." *Decker*, at ¶ 15 (emphasis added).

[¶32] "When several claims are made against the insured in the underlying

action, the insurer has a duty to defend the entire lawsuit if there is potential liability or a possibility of coverage for any one of the claims." *Tibert*, 2012 ND 81, ¶ 30, 816 N.W.2d 31; *see Schultze v. Continental Ins. Co.*, 2000 ND 209, ¶ 14, 619 N.W.2d 510; *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 11, 559 N.W.2d 846. "Any doubt about whether a duty to defend exists must be resolved in favor of the insured." *Tibert*, at ¶ 31; *see Schultze*, at ¶ 13. Even when an insurer has rightfully denied coverage, "the insurer's duty may be revived by the insured's new allegations that possibly bring the claim within the scope of the policy's provisions." *Decker*, 2005 ND 173, ¶ 15, 704 N.W.2d 857 (finding an insurer's duty to defend arose when complaint was amended). While the duty to defend focuses on the complaint's allegations, the duty to indemnify generally is determined by the actual result in the underlying action. *Tibert*, at ¶ 33.

[¶33] In *Tibert*, 2012 ND 81, ¶ 36, 816 N.W.2d 31, we explained an insurer's obligations in deciding whether a duty to defend exists in considering whether a policy exclusion applies:

> "[I]f the allegations pleaded in the complaint viewed at the time of tender include any potential liability or possibility of coverage under the policy, there is a duty to defend, and the insurer cannot simply refuse to provide a defense in the hope that the facts as determined by the factfinder in the underlying lawsuit preclude coverage under a policy exclusion. The insurer is not free to refuse to provide a defense, wait until the case is tried, and then with the benefit of hindsight claim the jury's resolution of disputed factual allegations is res judicata on the issue of duty to defend. The insurer's duty to defend is set by the pleadings and must be determined as of the time the defense it tendered; it is not affected by 'the course and outcome of the litigation.' 44 Am. Jur. 2d *Insurance* § 1400 (2003). An insurer faced with legitimate questions whether the factual allegations in the complaint create a duty to defend has an immediate remedy to resolve the question. The insurer (or the insured) can bring a declaratory judgment action to determine duty to defend before the underlying action is tried. *See* N.D.C.C. § 32-23-06. However, '[w]here a claim potentially may become one which is within the scope of the policy,' and the insurer does not avail itself of its right to seek an immediate declaratory judgment under N.D.C.C. § 32-23-06, 'the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril.' *Prince v. Universal Underwriters Ins. Co.*, 143 N.W.2d 708, 717 (N.D. 1966) (quoting *Cadwallader v. New Amsterdam Cas. Co.* [396 Pa. 582], 152 A.2d 484, 488 (Pa. 1959))."

[¶34] Here, in granting partial summary judgment the district court concluded United Fire had a duty to defend Muddy Rivers. We acknowledge Forsman's complaint primarily asserted she sustained injuries after Espinoza "assaulted" her. However, the complaint also separately alleged: "N.D.C.C. § 9-10-06 allows the Plaintiff to hold Defendants responsible for the Plaintiff's injury, occasioned by the Defendants' want of ordinary care or skill in the management of the Defendants' property." The complaint therefore asserted assault and dram shop liability claims and a separate negligence claim for premises liability. *Forsman I*, 2012 ND 184, ¶¶ 13-14, 820 N.W.2d 748. The issue thus becomes whether the CGL policy's plain language could provide coverage for Muddy Rivers' alleged separate negligent acts, which it may if neither of the previously discussed exclusions apply.

[¶35] Although United Fire contends the premises liability claim would not exist "but for" the underlying "assault" by an "allegedly obviously intoxicated person," disputed fact issues were developed at trial both as to whether Espinoza was obviously intoxicated and whether she assaulted Forsman. Moreover, we specifically refused to conclude Forsman failed to establish a breach of Muddy Rivers' duty under N.D.C.C. § 9–10–06, for her separate negligence claim "on the record in this case" after the initial trial. *Forsman I*, 2012 ND 184, ¶ 14, 820 N.W.2d 748.

[¶36] United Fire's duty to defend Muddy Rivers under the CGL policy arose if there was potential liability or a possibility of coverage for any one of the claims in Forsman's complaint. Forsman's complaint specifically alleged a separate negligence claim for premises liability against Muddy Rivers and, further, alleged facts that Forsman was injured assisting another guest on Muddy Rivers' premises. Moreover, Forsman testified at the subsequent trial that she was assisting a Muddy Rivers' employee when Espinoza "pushed" her. Thus, the case proceeded to trial after United Fire abandoned its insured, which resulted in disputed fact issues relevant to the issue of coverage and an appeal that remanded a statutory negligence claim against Muddy Rivers.

[¶37] Under these narrow facts and circumstances, resolving any doubt about the duty to defend in the insured's favor, the district court did not err in concluding United Fire had a duty to defend Muddy Rivers in Forsman's underlying action.

## VI

[¶38] We affirm in part, reverse in part and the case is remanded for proceedings consistent with this opinion.

[¶39] Daniel J. Crothers

Carol Ronning Kapsner, S.J.

Lisa Fair McEvers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

[¶40] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.