Filed 2/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 55

Rick Snider and Janan Snider d/b/a 

RJ Snider Construction, Plaintiffs and Appellees

v.

Dickinson Elks Building, LLC, Defendant and Appellant

No. 20170284

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Sean T. Foss, Fargo, N.D., for plaintiffs and appellees.

Christopher J. Thompson, West Fargo, N.D., for defendant and appellant.

Snider v. Dickinson Elks Building, LLC

No. 20170284

Tufte, Justice.

[¶1] Dickinson Elks Building, LLC, appeals from a judgment awarding Rick and Janan Snider, doing business as RJ Snider Construction (“RJ Snider”), $198,255.08 for unjust enrichment and quantum meruit claims.  Dickinson Elks argues the district court erred by deciding RJ Snider’s claims were not precluded by N.D.C.C. § 43-07-

02.  We conclude RJ Snider was not precluded from maintaining its claims; however, we reverse and remand for the district court to determine whether any of the damages awarded were for services and materials provided before RJ Snider was licensed.

I

[¶2] On December 26, 2011, RJ Snider contracted with Granville Brinkman to furnish materials and labor for construction work on real property owned by Dickinson Elks.  RJ Snider’s principal place of business is located in Washington.  On January 13, 2012, RJ Snider applied for a contractor license from the North Dakota Secretary of State, and the license was issued on February 6, 2012.

[¶3] RJ Snider provided services and materials for Dickinson Elks’ property from December 26, 2011, to November 30, 2012.  Dickinson Elks paid RJ Snider for all of the services and materials it provided between December 26, 2011, and February 1, 2012.  RJ Snider billed Dickinson Elks $71,542.50 for the services and materials it provided from February 2, 2012, through March 14, 2012.  Dickinson Elks paid $47,929.51 of the billed amount but did not pay $23,612.99.  RJ Snider billed Dickinson Elks $174,642.10 for the services and materials it provided from March 15, 2012, until November 30, 2012.  Dickinson Elks did not pay any of this amount.

[¶4] In January 2013, RJ Snider recorded a construction lien for $198,255.08 against Dickinson Elks’ property.  In May 2014, Dickinson Elks served RJ Snider with a demand to start a lawsuit to enforce the lien and record a lis pendens within 30 days of the demand.  RJ Snider sued Dickinson Elks in June 2014, seeking foreclosure of the construction lien and a money judgment for $198,255.08.  RJ Snider recorded a notice of lis pendens on July 28, 2014.

[¶5] Dickinson Elks moved for summary judgment, arguing RJ Snider’s complaint should be dismissed under N.D.C.C. § 43-07-02 because RJ Snider was not a licensed contractor when it started work on the property.  Dickinson Elks also argued RJ Snider did not have a valid construction lien, because RJ Snider did not record a lis pendens within 30 days of receiving the demand to enforce the lien.  The district court partially granted the motion and entered a judgment forfeiting RJ Snider’s construction lien because RJ Snider did not record a lis pendens within 30 days of receiving Dickinson Elks’ demand to enforce the lien as required under N.D.C.C. § 35-27-25.  The court concluded RJ Snider’s claims were not precluded under N.D.C.C. § 43-07-02.  Dickinson Elks appealed, and this Court dismissed the appeal because the judgment was not a final, appealable judgment.  
Snider v. Dickinson Elks Bldg., LLC
, 2016 ND 162, ¶ 12, 883 N.W.2d 475.

[¶6] RJ Snider amended its complaint, claiming it was entitled to a money judgment against Dickinson Elks under the principles of quantum meruit and unjust enrichment.  The parties stipulated to entry of findings of fact, conclusions of law, and order for judgment, and also agreed Dickinson Elks was not waiving any right to appeal by entering into the stipulation.  The parties agreed RJ Snider provided materials and services for the benefit of Dickinson Elks’ property, it was not paid for the services and materials it provided, and RJ Snider established it was entitled to a money judgment against Dickinson Elks in the amount of $198,255.08 under the principles of quantum meruit and unjust enrichment.

[¶7] The district court entered findings of fact, conclusions of law, and order for judgment consistent with the parties’ stipulation.  Judgment was entered in favor of RJ Snider in the amount of $198,255.08.

II

[¶8] Dickinson Elks argues the district court erred in determining RJ Snider’s claims were not precluded by N.D.C.C. § 43-07-02.  Dickinson Elks contends N.D.C.C. § 43-07-02 requires a contractor be licensed at the time of contract formation or commencement of work under the contract to maintain a claim or action related to the work performed under the contract.  Because RJ Snider did not obtain a license until after it had entered into the contract and started working on the project, Dickinson Elks claims RJ Snider is precluded from bringing any claims and the complaint should have been dismissed.

[¶9] The district court denied Dickinson Elks’ motion for summary judgment on this issue.  Our standard for reviewing a district court’s decision on a motion for summary judgment is well-established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

Forsman v. Blues, Brews and Bar-B-Ques, Inc.
, 2017 ND 266, ¶ 9, 903 N.W.2d 524 (quoting 
K & L Homes, Inc. v. Am. Family Mut. Ins. Co.
, 2013 ND 57, ¶ 7, 829 N.W.2d 724).

[¶10] When this action was commenced in 2014, N.D.C.C. § 43-07-02 stated:

A person may not engage in the business nor act in the capacity of a contractor within this state when the cost, value, or price per job exceeds the sum of two thousand dollars nor may that person maintain any claim, action, suit, or proceeding in any court of this state related to the person’s business or capacity as a contractor without first having a license as provided in this chapter.

A “contractor” is “any person engaged in the business of construction, repair, alteration, dismantling, or demolition of . . . buildings . . . and every other type of structure, project, development, or improvement coming within the definition of real or personal property, . . . and shall include subcontractor, public contractor, and nonresident contractor.”  N.D.C.C. § 43-07-01(1).  The parties do not dispute RJ Snider is a contractor for purposes of N.D.C.C. § 43-07-02.

[¶11] Statutory interpretation is a question of law.  
Conrad v. Wilkinson
, 2017 ND 212, ¶ 10, 901 N.W.2d 348.  The primary objective in interpreting a statute is to determine the legislative intent, and that intent is initially sought from the language of the statute.  
Id.
  Words are given their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears.  
Id.
; N.D.C.C. § 1-02-02.  “When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.

[¶12] It is not always possible to characterize a 71-word sentence as plain language, but despite its length and complexity, the internal structure reveals plainly enough how the statute achieves its ends.  There are two parts to N.D.C.C. § 43-07-02.  Both parts are modified by the final clause “without first having a license as provided in this chapter.”  The first part states that without a license, a person may not engage in the business or act in the capacity of a contractor when the value or cost of the job exceeds $2,000.  The second part states a person may not maintain any claim, action, suit, or proceeding related to that person having either engaged in the business or acted in the capacity of a contractor without a license.  At a minimum, the statute precludes a contractor from bringing an action or claim related to the person’s contracting activity for periods when the contractor was not licensed.

[¶13] The purpose of the statute is to protect consumers from fraudulent practices and to protect the public from unqualified or uninsured contractors.  The licensing requirements allow the registrar to investigate and determine the license applicant’s fitness to act in the capacity of a contractor, including requesting information about the applicant’s criminal history.  N.D.C.C. § 43-07-04(1).  The licensing requirements also protect the public by ensuring a contractor has liability insurance and has secured workforce safety and insurance coverage.  
Id. 
 The licensing statutes encourage a contractor to obtain a license, and we interpret N.D.C.C. § 43-07-02 to allow a contractor to pursue an action or claim only for work performed while licensed.  This interpretation is consistent with the text and furthers the purpose of the licensing statutes.

[¶14] The parties agree RJ Snider was first issued a North Dakota contractor license on February 6, 2012, and began working on the Dickinson Elks’ property on December 26, 2011.  They also agree Dickinson Elks paid RJ Snider for all of the work completed between December 26, 2011, and February 1, 2012, and for a portion of the work completed after February 1, 2012.  RJ Snider sued Dickinson Elks for unjust enrichment and quantum meruit seeking damages for unpaid work completed between February 2, 2012, and November 30, 2012.  Under N.D.C.C. § 43-07-02, RJ Snider is precluded from maintaining a claim or an action related to its business as a contractor before it was licensed.  RJ Snider’s claims for quantum meruit and unjust enrichment for the period it was licensed can be separated from any claim it may have raised related to the period when it was not licensed.  The statute does not preclude RJ Snider from maintaining its unjust enrichment and quantum meruit claims related to its work as a contractor after it was licensed.  The district court did not err in denying Dickinson Elks’ motion for summary judgment on this issue; however, it erred to the extent it allowed RJ Snider to maintain claims related to work performed before it was licensed.

[¶15] Citing 
Preference Personnel, Inc. v. Peterson
, 2006 ND 35, 710 N.W.2d 383, Dickinson Elks argues RJ Snider was required to be licensed at the time it executed the contract to be able to maintain any claim or action related to the work performed.  In 
Preference Personnel
, this Court held it was against public policy to enforce an employment agreement between an employment agency and a worker because the agency was not licensed when the parties entered into the contract.  
Id.
 at ¶¶ 8-10.  We explained that by enacting a statutory licensing requirement, the legislature established a policy of requiring licensure before conducting any activities as an employment agency, and, therefore, it would be against public policy to enforce a contract between an individual and an unlicensed employment agency, and to conclude otherwise would undermine the purpose of the licensing requirement.  
Id.
 at ¶ 10.

[¶16] This case is different from 
Preference Personnel
.  In 
Preference Personnel
, 2006 ND 35, ¶¶ 2-3, 710 N.W.2d 383, the employment agency sued a worker for breach of contract and to enforce the employment agreement the parties entered into when the employment agency was not licensed.  In this case, RJ Snider sued Dickinson Elks for unjust enrichment and quantum meruit.  RJ Snider did not sue Dickinson Elks to enforce a contract.  RJ Snider did not have a contract with Dickinson Elks.  RJ Snider’s contract, which it entered prior to licensure, was with  Granville Brinkman, who is not party to this action.

[¶17] Furthermore, the statute at issue in this case is different from the statute construed in 
Preference Personnel
.  In
 Preference Personnel
, the statute required an employment agency to be licensed before conducting business but did not specifically prohibit the enforcement of a contract between an individual and an unlicensed employment agency; rather, this Court decided it was against public policy to enforce a contract between an individual and an unlicensed employment agency.  
Preference Personnel
, 2006 ND 35, ¶¶ 8-10, 710 N.W.2d 383.  In this case, N.D.C.C. § 43-07-

02 contains specific language governing actions or claims by unlicensed contractors, and we must construe and apply that provision.  Unlike statutes in other states, N.D.C.C. § 43-07-02 does not expressly condition court action on licensure both at the time of entering into a contract and at all times while performing work under a contract.  
See, e.g.
, Ariz. Rev. Stat. § 32-1153 (requiring valid license at entry into contract and when cause of action arose); Utah Code § 58-55-604 (same); Or. Rev. Stat. § 701.131(1) (requiring valid license at time of contracting and “[c]ontinuously while performing the work for which compensation is sought”).  Section 43-07-02, N.D.C.C., bars all claims by a contractor premised on actions taken in the capacity of a contractor during a period of time the contractor was not licensed.

[¶18] RJ Snider was licensed on February 6, 2012, and N.D.C.C. § 43-07-02 allows RJ Snider to pursue claims or actions for the period it was licensed.  The district court, in accordance with the parties’ stipulation, ordered Dickinson Elks to pay RJ Snider $198,255.08 for services and materials it provided for the benefit of Dickinson Elks’ property from February 2, 2012, to November 30, 2012.  It is not clear from the record whether any part of the unpaid services and materials were provided while RJ Snider was not licensed.  That is a factual issue for the district court to determine, and it is therefore necessary to remand the case.  Because RJ Snider was not licensed until February 6, 2012, and the court awarded RJ Snider $198,255.08 for unpaid services and materials provided to the Dickinson Elks’ property between February 2, 2012, and November 30, 2012, we reverse the district court’s decision and remand for the court to determine whether any portion of those unpaid services and materials were provided while RJ Snider was not licensed.

III

[¶19] We reverse the judgment and remand for further proceedings consistent with this decision.

[¶20] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Gerald W. VandeWalle, C.J.